IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| DRAKE ALLEN GAFFORD,<br>　　*Plaintiff*,<br><br>v.<br><br>COUNTY OF UPTON, UPTON COUNTY SHERIFF'S OFFICE, DAN W. BROWN LAW ENFORCEMENT CENTER, CINDY BROWN, LAURIE K. ENGLISH, STEVEN DODD, TYLER PERKINS, JERRY ROBERTSON, K.T. PRUETT, GRAHAM SMITH, OFFICE OF THE ATTORNEY GENERAL, and JANE DOE,<br>　　*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>　　7:25-CV-00416-DC-RCG |

### DEFENDANTS' MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

On January 29, 2023, Plaintiff was arrested after he <u>violently assaulted</u> Deputy Sheriff Tyler Perkins during a routine traffic stop, seized his neck, and <u>choked him</u>. Now, over two years later, Plaintiff brazenly seeks millions of dollars to compensate alleged injuries he himself proximately caused. Plaintiff's suit is the very definition of a baseless, frivolous claim. Accordingly, County of Upton, Upton County Sheriff's Office, Dan W. Brown Law Enforcement Center, Cindy Brown, Tyler Perkins, Jerry Robertson, K.T. Pruett, Graham Smith, and Jane Doe ("Defendants"), defendants in the above-styled and numbered cause, file this Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

### I.
### INTRODUCTION

1. Plaintiff is Drake Allen Gafford and/or Drake-Allen; Gafford and/or DRAKE ALLEN GAFFORD and/or Drake-Allen Gafford and/or Drake-Allen gaffford and/or Drake-Allen; gafford,

and any other iteration of Plaintiff's name, as the case may be. ("Plaintiff").

2. Defendants are County of Upton, Upton County Sheriff's Office, Dan W. Brown Law Enforcement Center, Cindy Brown, Tyler Perkins, Jerry Robertson, K.T. Pruett, Graham Smith, and Jane Doe, all employees or departments within Upton County, Texas.

3. The Plaintiff did not state a claim upon which relief can be granted. Therefore, the Court should dismiss Plaintiff's suit.

4. In the complaint, Plaintiff (1) shows that he failed to meet the requirements of the statute of limitation for his claims and (2) fails to state a claim for the violation of his constitutional rights and personal injury. Additionally, Defendants are entitled to qualified immunity and Upton County cannot be liable.

## II.
## STATEMENT OF FACTS

5. On January 29, 2023, around 9:24 p.m., Deputy Tyler Perkins observed Gafford's white Ford F250 pulling a flatbed trailer on Texas Highway 329 without illuminated taillights or a license plate light. Exs B & C. Based on these observations, Gafford was pulled over by Deputy Perkins. Exs B & C.

6. As Gafford was pulling over, he turned on his flatbed taillights and the F250 taillights. Exs B & C. Deputy Perkins tried to make initial contact with Gafford at the passenger window but walked over to the driver's window because the passenger window appeared to be nonfunctional. Exs B & C. When Deputy Perkins and Gafford started speaking, Deputy Perkins explained why Gafford had been pulled over, and Gafford wanted to get out to take a look, despite the fact that he turned on his taillights only after the patrol car's red and blue lights turned on. Exs B & C. Deputy Perkins then asked if Gafford had a driver's license. Exs B & C. Gafford responded that he did, which prompted Deputy Perkins to ask if he could get Gafford's driver's license from him. Exs B

& C. Gafford responded, "no you can't." Exs B & C. **Transportation Code section 521.025[1] requires driver's license holders to display their license on demand if they are operating a vehicle, to a peace officer. When Gafford refused to display his license at the lawful request of Deputy Perkins, he committed a misdemeanor in front of him.** *See* **Tex. Transp. Code § 521.025; Tex. Penal Code § 38.02; Tex. Code of Crim. Proc. Art. 14.03(a)(1).**

7.  Deputy Perkins then asked Gafford to exit the vehicle, who did so without incident, walking to the end of his flatbed trailer with Deputy Perkins. Exs B & C. Once they got to the back of the trailer, Deputy Perkins told Gafford that he was going to be detained and placed in handcuffs until Deputy Perkins could identify him. Exs B & C. Deputy Perkins states in his affidavit that in addition to the wrongful refusal to produce his license, from training and experience, he knows individuals with warrants will sometimes refuse to identify themselves. Ex. B. Based on this and Gafford's demeanor, Deputy Perkins attempted to detain Gafford and place him in handcuffs. Exs B & C. But Gafford sat down on the trailer and refused to place his hands behind his back, asking repeatedly if there was an emergency. Exs B & C. Deputy Perkins answered by stating that there was no emergency, but that Gafford needed to be detained until he identified himself. Deputy Perkins attempted to gain control of Gafford's hands by taking Gafford's right wrist and asking him to stand up and place his hands behind his back. Exs B & C. Gafford continued to refuse Deputy Perkins' commands. Exs B & C. Deputy Perkins attempted to stand Gafford up by pulling

---

[1] Texas Transportation Code section 521.025(a) states as follows:

(a) A person required to hold a license under Section 521.021 shall:

   (1) have in the person's possession while operating a motor vehicle the class of driver's license appropriate for the type of vehicle operated; and

   (2) **display** the license **on the demand of a** magistrate, court officer, or **peace officer**.

(b) **A peace officer may stop and detain** a person operating a motor vehicle **to determine if the person has a driver's license** as required by this section.

Tex. Tranp. Code § 521.025 (a) (emphasis added).

his right wrist towards him, at which point, **Gafford violently jumped off the trailer, tackling Deputy Perkins and pinning him to the ground**. Exs B & C. **Gafford then started choking Deputy Perkins**. Exs B & C. After several seconds, Gafford told Deputy Perkins he would get off of him if Deputy Perkins would "calm down." Exs B & C. In an attempt to avoid having to pull out his firearm, Deputy Perkins verbally acquiesced, and Gafford stood up and walked back towards the flatbed trailer. Exs B & C. Deputy Perkins regained his footing, removed his taser from its holster, and told Gafford to put his hands behind his back and to get on his knees. Exs B & C. Gafford placed his hands behind his back but refused to get on the ground. Exs B & C. Deputy Perkins then had to locate his radio on the ground and call for backup, telling Gafford he was under arrest for assault. Exs B & C.

8. Deputy Jerry Robertson arrived on scene. Exs B & C. As he was walking up, Robertson asked if Gafford had any weapons on his person and asked if he had anything behind his back, since his hands were hidden. Exs B & C. Deputy Perkins advised Robertson there were no weapons on Gafford's person. Exs B & C. Deputy Perkins told Robertson that Gafford needed to be detained and placed in handcuffs. Exs B & C. Both Deputy Perkins and Robertson told Gafford multiple times to get on his knees. Exs B & C. Gafford refused. Exs B & C. Robertson grabbed Gafford by his shirt and placed him on the ground. Exs B & C. Gafford began resisting Robertson on the ground, and it appeared that Robertson was losing control of Gafford. Exs B & C. Deputy Perkins shot his taser into the right lower side of Gafford's back, but Gafford began to pull both prongs out of his lower back, so Deputy Perkins deployed the taser a second time into Gafford's lower left buttock. Exs B & C. Robertson gained control of Gafford's hands and placed handcuffs on him. Exs B & C. An ambulance was called. Exs B & C.

9. Sergeant K.T. Pruett arrived on scene, followed by Rankin County EMS, who removed

the taser prongs from Gafford. Exs B & C. Gafford refused to accept medical attention from EMS personnel. Exs B & C. Deputy Perkins collected Gafford's driver's license from EMS personnel. Exs B & C. Deputy Perkins then transported Gafford to the Upton County Sheriff's Office. Exs B & C. Deputy Robertson remained on scene to wait for the tow truck to arrive. Exs B & C.

10. At the Upton County Sheriff's Office, Investigator Graham Smith arrived while Gafford was being booked by the jailer. Exs B & C. While Gafford was being booked, Sgt. Pruett stated that Gafford needed to be transported to the hospital to have him medically cleared. Exs B & C. Deputy Perkins and Smith transported Gafford to the hospital. Exs B & C. Investigator Smith and Deputy Perkins walked Gafford inside of the hospital. Exs B & C. Gafford refused any medical treatment from the doctor. Exs B & C. Gafford was medically cleared, and Deputy Perkins collected the discharge papers and transported Gafford back to the Upton County Sheriff's Office. Exs B & C. Deputy Perkins remained in the booking area of the jail while Gafford was booked. Exs B & C. Towards the end of the booking process Gafford refused to provide his fingerprints. Exs B & C. Gafford was placed into a holding cell without incident. Exs B & C.

11. The incident over which Gafford sues was captured on the bodycam and dashcam videos of Tyler Deputy Perkins, Jerry Roberton, and K.T. Pruett. Ex. C. This bodycam/dashcam video footage is incorporated by reference and attached to this motion in the Appendix as Exhibit C and controls over any allegations by Plaintiff contrary to the video recordings. *See Hanks v. Rogers*, 853 F.3d 738, 743–744 (5th Cir. 2017).

### III.
### MOTION TO DISMISS

**A. Arguments and Authorities**

12. A court has authority to dismiss a suit for failure to state a claim upon which relief can be granted if the complaint does not state factual allegations showing that the right to relief is

plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 & n.3 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Moreover, under 28 U.S.C. § 1915(e), "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.  Statute of Limitations**

13. Although the Complaint is not entirely clear, the Plaintiff has conceivably alleged two general types of claims in this suit. The first are federal law claims arising under 42 U.S.C. § 1983; the second are state-law claims. Both types are barred by the statute of limitations.

14. "It is well established that federal courts borrow the forum state's general personal injury limitations period." *Ali v. Higgs*, 892 F.2d 438, 439 (5th Cir. 1990) (citing *Owens v. Okure*, 488 U.S. 235 (1989) and *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989)." In Texas, the applicable period is two years." *Ali v. Higgs*, 892 F.2d 438, 439 (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 1986)).

15. "However, 'the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.'" *Washington v. Tex. Dep't of Criminal Justice*, 653 F. App'x 370, 371-72 (5th Cir. 2016) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). "Under federal law, a claim generally accrues the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured and that there is a connection between his injury and the defendant's actions. The plaintiff does not need to know that

a legal cause of action exists, but only needs to know the facts that would support a claim." *Washington v. Tex. Dep't of Criminal Justice*, 653 F. App'x 370, 371-72 (citing and quoting from *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (internal quotation marks and citation omitted)). "Furthermore, a lack of familiarity with the legal process or lack of legal assistance during the limitations period does not merit equitable tolling." *Christopher M. Garcia Milam Cty. #16929 v. Bell Cty. Court at L. #2*, No. W-25-CA-314-ADA, 2025 U.S. Dist. LEXIS 167808, at *5 (W.D. Tex. 2025) (citing *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999)).

16. Here, Plaintiff alleges that the events that are the subject matter of his lawsuit against Defendants took place on January 29, 2023 [document numbers 1 & 1-2]. Yet, Plaintiff didn't file his complaint until September 9, 2025. Plaintiff inexcusably filed his complaint two years, seven months, one week, and four days after his alleged injuries. Moreover, Plaintiff even sent a sworn "Notice of Claim" to Upton County on May 23, 2023, detailing the same injuries he is complaining of in this suit, including the confinement-related allegation, showing his full knowledge of all facts necessary for him to support the alleged claim, which Notice of Claim is attached to this motion as Exhibit A and incorporated by reference. Ex. A. Even using this date, Plaintiff's Complaint is filed late—two years, three months, two weeks, and three days after the date Plaintiff stated under oath all facts needed to support his alleged claim. Ex. A.

17. Therefore, the Plaintiff has utterly failed to timely file his claims. Plaintiff was not diligent, cannot show good cause, and cannot prove excusable neglect. Ignorance is no excuse. For these reasons, Plaintiff Complaint against all defendants, including the Defendants filing this motion, should be dismissed.

C. 1983 Claims

18. Plaintiffs' claims arise under 42 U.S.C. § 1983. "To state a 1983 claim, 'a plaintiff

must (1) allege a violation of a right secured by the Constitution or laws of the United Sates and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *James v. Texas Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008) (citing *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)).

19. "Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity." *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016). "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105 (1985). "Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105 (1985) (internal citations and quotations omitted).

20. A county or its policymakers may be held liable under § 1983 "when execution of a [county]'s policy or custom . . . by those whose edicts or acts may fairly be said to represent official policy, inflicts injury . . . ." *Pratt*, 822 F.3d at 180 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). But a county is not liable under a *respondeat superior* theory. *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 403, (1997). To allege a county's liability under Section 1983, a plaintiff must assert that: (1) a policy or custom existed; (2) the policymakers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation. *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002); *Meadowbriar Home for Children, Inc. v. G.B. Gunn*, 81 F.3d 521, 532–33 (5th Cir. 1996).

21. Finally, the plaintiff must allege specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. See *Schultea v. Wood*, 47 F.3d

1427, 1433 (5th Cir. 1995). The plaintiff must prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence. *See Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994). The negligent deprivation of life, liberty, or property is not a constitutional violation. *See Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995). Moreover, to hold a defendant liable under §1983, the plaintiff must adduce facts demonstrating the defendant's participation in the alleged wrong. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992); *Jacquez*, 801 F.2d at 793.

### D. Official Capacity Claims Against Defendants.

22. To the extent Defendants are sued in their official capacity, the official-capacity claims are really just claims against Upton County. Accordingly, the official capacity claims fail. *See supra,* Part 3.C.

### E. Defendants are entitled to Qualified Immunity

23. When a governmental official with discretionary authority is sued for damages under Section 1983 and properly raises the defense of qualified immunity, the plaintiff bears the burden of rebutting that defense." *Johnson*, 379 F.3d at 301 (citing *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992)).

> The Supreme Court has outlined a two-prong test for determining whether an official is entitled to qualified immunity: (1) 'the first inquiry must be whether a constitutional right would have been violated on the facts alleged,' and (2) 'if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.

*Morgan v. Swanson*, 610 F.3d 877, 883 (5th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (stating further that "in the light of pre-existing law the unlawfulness must be apparent"). Moreover, qualified immunity

should even be granted "if a reasonable official would be left uncertain of the laws' application to the facts confronting him." *McClendon v. City of Columbia*, 305 F.3d 314, 332 (5th Cir. 2002, en banc). An officer must be on notice that the officer's conduct was unlawful. *See Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc), *cert. dendied sub nom, Hunter v. Cole*, 141 S. Ct. 111, 207 L. Ed. 2d 1051 (2020). Finally, "Section 1983 does not create supervisory or *respondeat superior* liability. The individual officials may be liable only for implementing a policy that is 'itself [] a repudiation of constitutional rights' and 'the moving force of the constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). And "[t]he defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur Cty.*, 245 F.3d at 457 (emphasis in original).

24. Here, Defendants acted in good faith. *See supra*, Part II; Ex. B. Plaintiff does not allege any specific action that any of the specific Defendants took that was unlawful in light of clearly established law, but instead, he relies solely upon conclusory statements. [*See* docket numbers 1 & 1-2]; *see also* Ex. D; *Thomas v. Humfield*, 32 F.3d 566 (5th Cir. 1994) (stating that a plaintiff seeking to overcome qualified immunity "must specifically identify each defendant's personal involvement in the alleged wrongdoing.").

25. Defendants' video evidence speaks for itself—unsupported speculation cannot defeat summary judgment. *See Smith v. Saenz*, No. 24-50975, 2025 U.S. App. LEXIS 20756, at *4 (5th Cir. 2025) (quoting from *Hanks v. Rogers*, 853 F.3d 738, 743–744 (5th Cir. 2017) and holding that "while 'we review the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor,' we will not accept 'a plaintiff's version of the facts . . . for purposes of qualified immunity when it is blatantly contradicted and utterly discredited by video

recordings.'"); *see also supra*, Part II; Ex. B. Plaintiff fails to state the specific acts or omissions he contends each Defendant committed by stating with particularity each act or omission, supporting each claim with proper and sufficient factual allegations to raise a right to relief above the speculative level. There is no genuine issue of material fact showing actionable conduct on the part of any of the Defendants. Defendants are entitled to qualified immunity.

### F.  Upton County is not Liable

26. It is settled law that a governmental entity cannot be liable under § 1983 on a *respondeat superior* theory. *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992). "Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity." *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016). A "municipality," which in this case includes other local governmental units such as a county, is a "person." *Hampton Co. Nat. Sur., LLC v. Tunica Cty., Miss.*, 543 F.3d 221, 224 (5th Cir. 2008). A county or its policymakers may be held liable under § 1983 "when execution of a [county]'s policy or custom . . . by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Pratt*, 822 F.3d at 180 (citing M*onell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978)). A plaintiff may not sue a county under § 1983 for an injury inflicted solely by its employees or agents under a theory of *respondeat superior* or vicarious liability, but rather the plaintiff must allege that the county's execution or maintenance of a policy or custom caused the constitutional tort. *Monell*, 436 U.S.at 694.

27. To allege a county's liability under Section 1983, a plaintiff must assert that: (1) an official policy or custom existed that was promulgated by the municipal policymaker; (2) the policymakers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation. *Pineda v.*

*City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002); *Meadowbriar Home for Children, Inc. v. G.B. Gunn*, 81 F.3d 521, 532–33 (5th Cir. 1996); *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 760 (5th Cir. 2023); *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018).

28. Upon County, the Upton County Sheriff's Office and the Dan W. Brown Law Enforcement Center are one and the same party. Plaintiff has failed to raise any argument or facts supporting any of these requirements necessary to hold Upton County, or any of its departments including without limitation the Dan W. Brown Law Enforcement Center, liable under § 1983. Ultimately, Plaintiffs' failure to clearly identify a policy or custom causing them harm fails to state a claim. Plaintiffs did not identify a policy or custom of Upton County upon which liability can be based. In short, Upton County has not, in any way, violated the constitutional rights of Plaintiff.

## IV.
## EVIDENCE

29. In support of his motion, Defendants include evidence in the attached appendix, which evidence is incorporated by reference into this motion.

## V.
## CONCLUSION AND PRAYER

30. WHEREFORE, PREMISES CONSIDERED, Defendants County of Upton, Upton County Sheriff's Office, Dan W. Brown Law Enforcement Center, Cindy Brown, Tyler Perkins, Jerry Robertson, K.T. Pruett, Graham Smith, and Jane Doe pray that the Plaintiff's claims be dismissed with prejudice for failure to state a claim, assess costs against the Plaintiff, and award the defendants all other relief to which they may be justly entitled.

Respectfully submitted,

/s/ Benjamin Petty
DENIS DENNIS
State Bar No. 05655566
ddennis@kmdfirm.com
BENJAMIN PETTY

        State Bar No. 24105934
        bpetty@kmdfirm.com

OF

KELLY, MORGAN, DENNIS,
CORZINE & HANSEN, P.C.
P.O. Box 1311
Odessa, Texas 79760-1311
(432) 367-7271  /  FAX:  (432) 363-9121

        ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

        I hereby certify that on October 15, 2025, I electronically filed the foregoing with the Clerk of the Court using the electronic filing system. The following parties will be notified of this filing, by the method indicated:

**VIA CERTIFIED MAIL**
Drake Allen Gafford
1350 FM 538
Stockdale, Texas 78160
*Plaintiff, Pro Se*

         */s/ Benjamin Petty*
        BENJAMIN PETTY